81 F.3d 170
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio Juan AZHOCAR, Defendant-Appellant.
 No. 95-50141.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1995.
Decided March 29, 1996.
As Amended June 10, 1996.
 
 Before: HUG, Chief Judge, BEEZER, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Antonio Juan Azhocar appeals his jury conviction and sentence under the Sentencing Guidelines for possession of methamphetamine with intent to distribute (21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2) and use of a firearm during the commission of a drug trafficking crime (18 U.S.C. § 924(c)(1)). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 I. Sufficiency of the Evidence
 
 3
 Azhocar first argues that because there was insufficient evidence to link him to the methamphetamine and/or his codefendant Hereford that the district court erred in denying his motion for acquittal pursuant to Fed.R.Crim.P. 29.
 
 
 4
 We review de novo the denial of a motion for acquittal to determine whether, viewing the evidence in the light most favorable to the Government, there was substantial evidence produced from which the jury reasonably could have found the defendant guilty beyond a reasonable doubt. United States v. Riggins, 40 F.3d 1055, 1057 (9th Cir.1994). Possession with intent to distribute narcotics may be based on dominion and control over the contraband or aiding and abetting. United States v. Ramos-Rascon, 8 F.3d 704, 711 (9th Cir.1993). We conclude that the Government established under both the dominion and control and the aiding and abetting theories that Azhocar possessed methamphetamine with intent to distribute.
 
 A. Dominion and Control
 
 5
 "In order to sustain a conviction [of possession], there must be sufficient evidence to show that the defendant had either actual or constructive possession of the controlled substance." United States v. Earl, 27 F.3d 423, 424 (9th Cir.1994). Possession may be established on the basis of constructive possession. To do so, the Government must demonstrate: (1) that Azhocar knew of the presence of the methamphetamine in the buick and Toyota, and (2) that Azhocar had the power to exercise dominion and control over the items. See United States v. Bernard, 48 F.3d 427, 430 (9th Cir.1995).
 
 
 6
 There was substantial evidence that Azhocar did have the power to exercise dominion and control over the methamphetamine. The uncontroverted evidence showed that Agent Benjamin, the agent assigned to the case, and his fellow agents arrived at the In-N-Out Burger to conclude a prearranged 6.6 pound drug deal. After their arrival, the Government informant met with both Hereford and Azhocar and drove with Azhocar over to meet Agent Benjamin. Upon meeting Benjamin, Azhocar indicated to Benjamin where the drugs were and when Benjamin asked if the rest of the drugs were present, Azhocar indicated that they were. The rest of the drugs were subsequently found in Hereford's Toyota which had parked next to Azhocar's Buick. Furthermore, when Benjamin spoke with Azhocar, they discussed future drug transactions and negotiated future prices for these transactions. Azhocar told Benjamin that he could deal directly with Azhocar or his partners for any future drug deals. This was sufficient evidence from which a reasonable jury could have found that Azhocar had the power to exercise dominion and control over all 6.6 pounds of methamphetamine.
 
 B. Aiding and Abetting
 
 7
 We also conclude that Azhocar aided and abetted Hereford, who possessed 5.6 pounds of the methamphetamine. "To be guilty of aiding and abetting another person, it is necessary that the defendant 'in some sort associate himself with the venture, ... participate in it as something that he wishes to bring about, ... [and] seek by his action to make it succeed.' " United States v. Vasquez-Chan, 978 F.2d 546, 552 (9th Cir.1992) (quoting United States v. Sanchez-Mata, 925 F.2d 1166, 1169 (9th Cir.1991)).
 
 
 8
 The evidence shows that Azhocar and Hereford acted in concert to complete the illegal venture. The informant met both of them in the parking lot prior to a prearranged drug-deal. Azhocar opened the hood of his car, for no apparent reason except to signal his confederates in the pickup truck. The informant subsequently entered Hereford's Toyota, then Azhocar's Buick, before Azhocar drove with the informant in the Buick to meet Agent Benjamin, the supposed buyer. After Azhocar showed Agent Benjamin part of the drugs, and told him the rest were present, Hereford's Toyota arrived with the rest of the drugs. We conclude that this evidence, when viewed in the light most favorable to the Government, provided a sufficient basis upon which the jury could have found beyond a reasonable doubt that Azhocar aided and abetted the possession of drugs with the intent to distribute. Under either the dominion and control theory or under the aiding and abetting theory, there was sufficient evidence to convict Azhocar. The district court did not err in denying Azhocar's motion to acquit.
 
 II. Use of a Firearm
 
 9
 Azhocar was convicted under 18 U.S.C. § 924(c)(1) for using a handgun in furtherance of a drug trafficking crime. The recent Supreme Court opinion in Bailey v. United States, --- U.S. ----, 116 S.Ct. 501 (1995), clarifies the proper interpretation of that statute and thus we consider its application to Azhocar's conviction under section 924(c)(1).
 
 
 10
 In Bailey, the Supreme Court examined the applicability of section 924(c)(1) to persons "using" a firearm while engaging in a drug trafficking crime. The applicable provision of the statute reads:
 
 
 11
 Whoever, during and in relation to any ... drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years....
 
 
 12
 The Supreme Court held that in order to "use" a firearm during a drug trafficking crime a defendant must actively employ the firearm. Bailey, 116 S.Ct. at 508. The Supreme Court's requirement of the "active employment" test overruled a line of authority in this circuit where we had held that possession of a firearm is enough to support a conviction under 18 U.S.C. § 924(c)(1) if the jury could reasonably infer that the possessed gun could have played a role in the crime. See, e.g., United States v. Torres-Rodriguez, 930 F.2d 1375, 1385 (9th Cir.1991). The Supreme Court did not discuss in Bailey the "carrying" provision of the statute.
 
 
 13
 Subsequent to Bailey, we have explained that "in order to be convicted of 'carrying' a gun in violation of section § 924(c)(1), the defendant must have transported the firearm on or about his person." United States v. Hernandez, --- F.3d ----, 1996 WL 34822 at * 3 (9th Cir. Jan. 31, 1996). When Azhocar was arrested, a .357 caliber revolver was removed from his waistband, and he was clearly "carrying the firearm during and in relation to the offense." We, therefore, affirm the firearm conviction.
 
 III. Variance in the Indictment
 
 14
 Azhocar contends that the proof adduced to convict on Count One varied from the indictment. Specifically, Azhocar argues that Count One charged him with possessing 6.6 pounds of methamphetamine but that the Government only proved that he possessed one pound of methamphetamine. We review de novo the allegation that an indictment was constructively amended or has variance. United States v. Pisello, 877 F.2d 762, 765 (9th Cir.1989). "[A] ... variance occurs when the prosecution's evidence proves facts different from those alleged in the indictment." Id.
 
 
 15
 In the present case, the Government alleged in the indictment that Azhocar possessed with intent to distribute 6.6 pounds of methamphetamine. As we have discussed, the Government proved that Azhocar constructively possessed 6.6 pounds of drugs as evidenced by the district court's denial of Azhocar's Rule 29 motion and the jury verdict against him. Azhocar's substantial rights were not affected.
 
 IV. Jury Instructions
 
 16
 Azhocar contends that the instruction given by the court did not adequately present his theory of defense. The district court gave the Ninth Circuit Pattern Instruction on Possession (Pattern Instruction 3.16):
 
 
 17
 A person has possession of something if the person knows of its presence and has physical control over it, or has the power and intention to control it. More than one person can be in possession of something if each knows of its presence and has the power and intention to control it.
 
 Azhocar's proposed jury instruction read:
 
 18
 In order to prove possession with intent to distribute a controlled substance ... the government must prove beyond a reasonable doubt that Mr. Azhocar possessed methamphetamine. In order to prove possession the government must prove beyond a reasonable doubt that the defendant had dominion and control over the contraband. Merely being present, or having access to the controlled substance is not sufficient to prove possession. Proof that a person is present in a vehicle with another individual, and proof that the controlled substance is present in the car is insufficient to establish dominion and control without additional evidence.
 
 
 19
 We conclude that the instruction given by the district court adequately covered Azochar's theory of defense. The instruction given adequately defines possession and his theory was that he did not have possession. Moreover, the district court instructed the jury that "it was not enough that the defendant merely associated with another or was present at the scene of the crime or unknowingly or unintentionally did things that were helpful to the principal." Therefore, we conclude that the district court's refusal to give Azochar's proposed instruction was not error.
 
 V. Sentencing Guidelines
 
 20
 Azhocar argues that as a factual matter he demonstrated contrition for his crime, and therefore, the district court committed clear error in finding that he had not sincerely accepted responsibility. Azhocar also argues as a legal matter that the district court, by denying a reduction, punished him for exercising his constitutional right to go to trial.
 
 
 21
 Azhocar's show of contrition did not come until after he had gone to trial. The district judge made an express factual finding that "there is nothing that justifies acceptance of responsibility." One factor which the judge considered was "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." U.S.S.G. § 3E1.1, application note 1(h). "Entry of a plea of guilty prior to the commencement of trial" provides evidence of acceptance of responsibility, but Azhocar did not make his show of contrition until after a jury had convicted him.
 
 
 22
 The district judge did not err in finding that Azhocar was not among the "rare situations" where an expression of contrition after a jury trial would "clearly demonstrate an acceptance of responsibility." U.S.S.G. § 3E1.1, application note 2. "The guidelines recognize that sentences have historically been reduced by fairly predictable percentages upon pretrial pleas of guilty, and came about as close as they could, without penalizing the exercising of constitutional rights, to codifying the percentage." United States v. Vance, 62 F.3d 1152, 1160 (9th Cir.1995). Azhocar said at allocution, "I'm sorry for what I did, you know, people make mistakes." That is routine and ordinary, not among the "unusual cases in which a defendant is entitled to an acceptance of responsibility reduction despite having pleaded not guilty." United States v. McKinney, 15 F.3d 849, 853 (9th Cir.1994).
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3